# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

SHAWN ALAN KNIBBE,

        Claimant,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

        Defendant.

No. 18-CV-4043-LTS

**REPORT AND
RECOMMENDATION**

———————————

Shawn Alan Knibbe ("Claimant"), seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-34 of the Social Security Act. Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. For the reasons that follow, I recommend that the District Court **affirm** the Commissioner's decision.

## I.    BACKGROUND

I adopt the facts set forth in the Parties' Joint Statement of Facts (Doc. 16) and only summarize the pertinent facts here. This is an appeal from a denial of Claimant's request for disability insurance benefits ("DIB") and supplemental security income ("SSI").

Claimant was born on January 13, 1969. (AR[1] at 32.) Claimant has an associate degree in automotive mechanics. (*Id.* at 51.) The ALJ found Claimant "has at least a high school education and is able to communicate in English." (*Id.* at 32.) Claimant allegedly became disabled due to Parkinson's disease, shoulder pain, and lack of strength. (*Id.* at 303.) He was 48-years-old at the time of the ALJ's original decision on October 13, 2017. (*Id.* at 21-33.) Claimant filed his initial claim on December 9, 2014. (*Id.* at 24.) Claimant was initially denied benefits on April 29, 2015. (*Id.* at 153-62.) Claimant filed for reconsideration on May 12, 2015, and was again denied on August 10, 2015. (*Id.* at 164-76.) Claimant filed a Request for Hearing on September 21, 2015. (*Id.* at 179.) A hearing was held on June 7, 2017 in Omaha, Nebraska[2] with Claimant; his then-attorney, Hannah M. Vellinga; vocational expert Holly Berquist Neal; and ALJ David G. Buell present. (*Id.* at 39-90.) Claimant and the vocational expert both testified. (*Id.* at 46-89.)

The ALJ issued his decision denying Claimant benefits on October 13, 2017. (*Id.* at 21-33.) On November 27, 2017, Claimant filed a Request for the Appeals Council to review the ALJ's decision. (*Id.* at 259.) On May 18, 2018, the Appeals Council found there was no basis to review the ALJ's decision. (*Id.* at 1.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. On July 23, 2018, Claimant timely filed a complaint in this Court. (Doc. 4.) On January 10, 2019, the Honorable Leonard T. Strand, Chief United States District Court Judge, referred the case to me for a Report and Recommendation.

---

[1] AR citations refer to pages in the Administrative Record.

[2] The hearing transcript says the hearing took place in West Des Moines, Iowa. (AR at 39.) However, the ALJ's decision (*Id.* at 24), the hearing notice (*Id.* at 254), and the Parties' Stipulated Facts (Doc. 16) state that the hearing took place in Omaha.

## II.    DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability when, due to physical or mental impairments, the claimant

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B). A claimant is not disabled if he or she is able to do work that exists in the national economy, but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. *Id.* § 404.1566(c).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 416.972(a),(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 416.920(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). RFC is what the claimant can still do despite his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is

any work the claimant performed within the fifteen years prior to his or her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 416.920(a)(4)(v), 416.960(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work exists in substantial numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A. The ALJ'S Findings

The ALJ made the following findings at each step with regard to Claimant's disability status:

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since his alleged onset date. (AR at 26.)

At step two, the ALJ found that Claimant suffered from the following severe impairments: Parkinson's disease, bilateral shoulder degenerative joint disease, and a cardiac impairment. (*Id.*)

At step three, the ALJ found that none of Claimant's impairments met or equaled a presumptively disabling impairment listed in the regulations, specifically listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926). (*Id.* at 27.)

At step four, the ALJ found that Claimant had the following RFC:

Claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), except the following: he remains unable to frequently push and pull, reach overhead, handle and finger. He can occasionally stop, kneel, crouch, and crawl. He is unable

to climb ladders and he should avoid exposures to hazards such as unprotected heights and the operation of motor vehicles. He cannot perform work that requires exposure to sustained and concentrated extreme temperatures or vibration.

(*Id.*) Based on this RFC, the ALJ found at step four that Claimant could not perform his past relevant work as an automobile parts counter clerk, tractor trailer truck driver, or automobile mechanic. (*Id.* at 31.)

At step five, the ALJ found that alternative work existed in significant numbers in the national economy as a document preparer, telephone quote clerk, and addressing clerk. (*Id.* at 32.) Therefore, the ALJ concluded that Claimant was not disabled. (*Id.* at 33.)

## B.    *The Substantial Evidence Standard*

The ALJ's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Moore*, 572 F.3d at 522. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). The decision is not outside that zone of choice simply because the court might have reached a different decision. *Id.* (citing *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001)); *Moore*, 572 F.3d at 522 (holding that the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision).

In determining whether an ALJ's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the ALJ's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the

[ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

C.     **Duty to Develop the Record**

The administrative hearing is a non-adversarial proceeding, and the ALJ has a duty to "fully develop the record." *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)).  Because the ALJ has no interest in denying Social Security benefits, the ALJ must act neutrally in developing the record.  *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citing *Richardson v. Perales*, 402 U.S. 389, 410 (1971)); *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994) (opining that "[t]he goals of the [ALJ] and the advocates should be the same: that deserving claimants who apply for benefits receive justice") (quoting *Sears v. Bowen*, 840 F.2d 394, 402 (7th Cir. 1988)) (bracketed information added).

### III.   DISCUSSION

Claimant alleges that he is entitled to a reversal and an award of benefits, or in the alternative to have his case remanded because (1) the ALJ improperly weighed the medical evidence in the record, (2) the ALJ improperly considered Claimant's subjective complaints, and (3) the ALJ based his RFC on an improper hypothetical question posed to the vocational expert during the hearing.  I will address each of Claimant's arguments, in turn.

A.     **The ALJ properly weighed the medical evidence.**

Claimant argues that the ALJ improperly weighed the medical evidence in the record.  Specifically, Claimant asserts that the ALJ erred in "rejecting the opinions of the treating physicians and relying upon the opinions of the non-examining doctors." (Doc. 17 at 3.)  Claimant argues that the ALJ not only rejected the Claimant's treating physicians' opinions that Claimant was disabled, but also rejected the state agency

reviewing physicians' opinions that he could do light work in favor of the ALJ's own unsupported opinion that that Claimant could do sedentary work. (*Id.* at 5.) Claimant also insists that his "testimony is consistent with limitations and symptoms contained in" his medical records. (*Id.*) In his reply memorandum, Claimant also seems to assert for the first time that the ALJ failed to mention the treatment notes of Dr. Bhatti, one of Claimant's physicians. (Doc. 19 at 1 ¶ 2.)

Dr. Case, Dr. Bertoni, and Dr. Bhatti are all "treating sources" because they all have provided Claimant with "medical treatment or evaluation" and have had "an ongoing treatment relationship" with Claimant.[3] *See* 20 C.F.R. § 404.1527(a)(2). An ALJ's RFC must ordinarily be supported by some medical evidence in the record. *See Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)); *Martin v. Berryhill*, No. 1:18-CV-00004 JM/PSH, 2019 WL 138655, at *6 (E.D. Ark. Jan. 8, 2019) (explaining that "the ALJ must weigh the various medical opinions in the record") (citation omitted), *R. & R. adopted*, 2019 WL 334202 (E.D. Ark. Jan. 25, 2019). "Where an ALJ does not rely on opinions from treating or examining sources, there must be some other medical evidence in the record for the ALJ's opinion to be supported by substantial medical evidence on the record." *Shuttleworth v. Berryhill*, No. 17-CV-34-LRR, 2017 WL 5483174, at *7 (N.D. Iowa Nov. 15, 2017) (quoting *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004)), *R. & R. adopted*, 2018 WL 1660084 (N.D. Iowa Apr. 5, 2018). As will be discussed below, I

---

[3] As will be discussed below, Dr. Bertoni's status as a treating physician is not documented in the record, although Dr. Bertoni refers to a six-month treating relationship with Claimant.

find that the ALJ properly resolved the conflicts in the record and supported his conclusions with citations to the record.

### 1. *Dr. James Case*

Dr. Case is Claimant's main treating physician. He referred Claimant to the University of Nebraska Medical Center's Movement Disorders Center ("the Movement Disorders Center") where Claimant was treated by the other physicians who wrote opinions in this case. Dr. Case completed a check-list medical source opinion on April 9, 2015. (AR at 467-69.) Dr. Case opined Claimant could sit for eight hours in an eight-hour workday and stand/walk for three hours in an eight-hour workday; he would need to shift positions at will from sitting, standing, or walking; he could occasionally lift ten pounds or less, could rarely lift 20 pounds, and could never lift 50 pounds; he could occasionally twist and stoop, rarely crouch/squat and climb stairs, but never climb ladders; and he would be able to use each of his hands to grasp, turn, and twist objects 50% of an eight-hour work day; use his fingers for fine manipulation 50% of an eight-hour work day; and reach (including overhead reaching) 25% of an eight-hour work day. (*Id.* at 468.) Dr. Case further opined that Claimant's symptoms were rarely severe enough to interfere with the attention and concentration needed to perform even simple work tasks and that Claimant would be absent from work on average about three days per month. (*Id.* at 469.)

The ALJ assigned Dr. Case's opinion "little weight" because it was inconsistent with the medical evidence in the record, Dr. Case did not include "any rationale for these limitations," and Dr. Case's own treatment notes from April 9, 2015 were inconsistent with the opinion. (*Id.* at 30.) Specifically, the ALJ noted that on that day, Dr. Case stated that Claimant did not exhibit upper extremity tremors, was able to twist, stoop down, and bend at the waist; and that Claimant exhibited fine finger dexterity. (*Id.*)

Claimant argues that the ALJ "rejected" Dr. Case's opinion, but makes no argument in support of his position. (Doc. 17 at 5.)

I agree with the ALJ that Dr. Case's own treatment notes do not provide a basis for his opinion. "A treating physician's own inconsistency may . . . undermine his opinion and diminish or eliminate the weight given his opinions." *Hacker*, 459 F.3d at 937 (citation omitted). In addition, the opinion consists of checklists, cites no medical evidence, and gives no explanation for its conclusions. "'The checklist format, generality, and incompleteness of the assessments limit [an] assessment's evidentiary value.'" *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (quoting *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) (internal brackets omitted); *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir.1996) ("A treating physician's opinion deserves no greater respect than any other physician's opinion when the treating physician's opinion consists of nothing more than vague, conclusory statements."). Therefore, a treating source's opinion can be given limited weight if it contains only conclusory statements or inconsistent opinions "that undermine the credibility of such opinions." *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (quotation omitted).

### a.    *Legal Standard*

"'A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record as a whole."[4] *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quotation omitted). "Even if the treating physician's opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight." *Papesh*, 786 F.3d at 1132 (citation

---

[4] Under current regulations, a treating physician's opinion is entitled to no special deference. *See* 20 C.F.R. § 404.1520c(c). These regulations were effective as of March 27, 2017. 20 C.F.R. § 404.1527. However, Claimant's claim was filed on December 9, 2014, so the old regulations apply. *See id.*

and bracket omitted). However, a treating physician's opinion can be given limited weight if it contains only conclusory statements, contains inconsistent opinions "that undermine the credibility of such opinions," is inconsistent with the record, or if other medical opinions are supported by "better or more thorough medical evidence." *Id.* (citations omitted). An ALJ must "give good reasons" for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); *Walker v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 550, 554 (8th Cir. 2018) (remanding case to the ALJ for further proceedings because ALJ "simply ignore[d]" treating physician's opinion). A proper evaluation of a physician's opinion requires consideration of the following factors: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors.[5] 20 C.F.R. §§ 404.1527(c)(1)-(5), 416.927(c). "[T]he regulations do not strictly require the ALJ to explicitly discuss each factor under 20 C.F.R. § 404.1527(c)." *Kuikka v. Berryhill*, No. 17-CV-374 (HB), 2018 WL 1342482, at *5 (D. Minn. Mar. 15, 2018) (quoting *Mapson v. Colvin*, No. 14–CV–1257 (SRN/BRT), 2015 WL 5313498, at *4 (D. Minn. Sept. 11, 2015) (noting internal brackets omitted)).

### b. Analysis

#### i. Examining Relationship

"Generally, [ALJs] give more weight to the medical opinion of a source who has examined [a claimant] than to the medical opinion of a medical source who has not examined [a claimant]." 20 C.F.R. § 404.1527(c)(1). However, a treating source's

---

[5] "Other factors" can include information claimants or others bring to the Social Security Administration's ("SSA") attention, or of which it is aware, which tend to support or contradict a medical opinion. "For example, the amount of understanding of [SSA] disability programs and their evidentiary requirements that a medical source has, regardless of the source of that understanding, and the extent to which a medical source is familiar with the other information in [a claimant's] case record are relevant factors that [SSA] will consider in deciding the weight to give to a medical opinion." 20 C.F.R. § 404.1527(c)(6).

opinion may be disregarded in favor of other opinions if it is not supported by substantial evidence in the record. *Casey*, 503 F.3d at 692. Dr. Case is Claimant's treating neurologist and examined him seven times between December 2, 2013 and April 9, 2015 prior to writing his opinion. Therefore, his opinion should be given more weight unless it is not supported by substantial evidence on the record as a whole. Although Dr. Case is Claimant's treating physician, as discussed below, I find that his opinion is not supported by substantial evidence on the record as whole. At most, this factor is neutral.

### ii. *Treatment Relationship*

"Generally, [ALJs] give more weight to the medical opinions from [a claimant's] treating sources. . . . When the treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment, [the ALJ] will give the source's opinion more weight than . . . if it were from a nontreating source." 20 C.F.R. at § 404.1527(c)(2)(i). In addition, "the more knowledge a treating source has about [a claimant's] impairment(s), the more weight the [ALJ] will give the source's opinion." *Id.* at § 404.1527(c)(2)(ii). As discussed, Dr. Case is Claimant's treating source and has treated him long enough to get a longitudinal picture of Claimant's impairments. In addition, Dr. Case has treated Claimant for his Parkinson's disease, Claimant's main basis for claiming disability benefits, and therefore Dr. Case's opinion should generally be given increased weight. *See Shontos v. Barnhart*, 328 F.3d 418, 426-27 (8th Cir. 2003). This factor weighs in favor of giving Dr. Case's opinion increased weight.

### iii. *Supportability*

"The better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). Dr. Case stated that he based his opinion on "physical assessments, over time." (AR at 469.) This statement is somewhat more supportive than appears in the conclusions of some

checklist-type medical source opinions.  However, without more, there is no way to judge whether Dr. Case's conclusions are supported or not.  Dr. Case is a neurologist opining on the physical limitations of a long-term patient.  Consequently, even if one assumes he conducted physical assessments of the patient, Dr. Case does not document the types of deficiencies that he noticed, the tests he ran, and the interventions attempted to help mediate Claimant's symptoms.

The checklist format of Dr. Case's opinion and the lack of support within the opinion weigh against giving the opinion much weight.  *See Papesh*, 786 F.3d at 1132. In addition, I agree with the ALJ's conclusion that Dr. Case did not "include any rationale for [his] limitations" and that this fact should weigh against giving the opinion much weight.  (*See* AR at 30.)

The ALJ also found that Dr. Case's opinion was not consistent with his own treatment notes.  (*Id.*)  Specifically, the ALJ concluded that the ALJ's conclusion that Claimant would be absent from work an average of three days a week was not supported because there was no documentation of missed appointments or other important events. (*Id.*)  My review of Dr. Case's treatment notes confirmed this conclusion and did not reveal any discussion of missed events in Claimant's life in spite of the otherwise comprehensive discussion of relevant topics noted during Dr. Case's examinations of Claimant.  (*Id.* at 447-66, 480-85) (all treatment notes contain summaries of discussions and notes for the following categories: General, Skin, HEENT (head, ears, eyes, nose, throat), Respiratory, Breast, Cardiovascular, Gastrointestinal, Male Genitourinary, Musculoskeletal, Neurological, Psychiatric, Endocrine, Hematology, Vital Signs (height, weight, body surface area, BMI, pulse, BP), Physical Examination, Neurologic Examination, Impression, Plan).

The ALJ also noted that Dr. Case's treatment notes from the day he wrote his opinion demonstrated that Claimant exhibited fine finger dexterity (citing Ex. 16F

wherein Dr. Case explains that Claimant could use a paper clip with both hands, although slowly); that Claimant did not have tremors; and that he could twist, stoop, and bend at the waist. (*Id.* at 30.)   My review of the record supports these findings by the ALJ. Moreover, although some of the limitations Dr. Case lists in his opinion are supported by his own treatment notes, some are not.  For example, Dr. Case indicated very specific lifting limitations in his opinion.  (*Id.* at 468.)   However, there is nothing in Dr. Case's treatment notes stating that he ever tested Claimant's lifting limits or that Claimant ever told Dr. Case that he had trouble lifting anything specific that would allow Dr. Case to estimate a lifting limit.   The only mentions of anything close to lifting limitations in Dr. Case's treatment notes, other than Claimant's overall diagnosis of generalized bradykinesia,[6] are a March 31, 2014 note stating that Claimant's strength was "normal" and a June 20, 2014 treatment note documenting Claimant's self-report that he "[felt] weak and encumbered trying to work overhead."  (*Id.* at 454, 456.)   No weights were stated in either note.   Accordingly, while there is some evidence in Dr. Case's treatment notes that supports the ALJ's conclusion, there is also evidence in Dr. Case's treatment notes that does not support the ALJ's conclusion, and therefore, this factor weighs in favor of giving Dr. Case's opinion limited weight.  *See Moore*, 572 F.3d at 522 (holding that the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision).

### iv.     Consistency

"Generally, the more consistent a medical opinion is with the record as a whole, the  more  weight  [the  ALJ]  will  give  to  that  medical  opinion."  20  C.F.R.  § 404.1527(c)(4).  In support of his conclusion that Dr. Case's opinion is not supported by

---

[6] Bradykinesia is an "abnormal slowness of muscular movement." *Dorland's Illustrated Medical Dictionary* 245 (32d ed. 2012).

other evidence in the record as a whole, the ALJ cited specific pages in the record that documented that Claimant did not have the "debilitating tremors or severe range of motion limitations" that Claimant testified to. (AR at 30.) After reviewing the record, I agree with the ALJ that Dr. Case's limitations are not supported by the record on the whole. (*Id.* at 381, 564, 716, 751, 760, 767, 783, 793 (full range of motion in upper extremities); *Id.* at 381, 751, 767, 784, 793 (hand tremors rated "slight and infrequent" to "moderate" with action); 390 (full range of motion in neck); 448 (no discernable obvious tremor, other than occasional flicker.) Therefore, I find that the ALJ's conclusion that Dr. Case's opinion is not consistent with the record as a whole is supported, and therefore this factor weighs in favor of giving Dr. Case's opinion limited weight.

### v.    *Specialization*

"[The ALJ will] generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). Dr. Case is a nuerologist who gave an opinion in his area of expertise about a patient under his care. (AR at 467-70.) Therefore, the ALJ was required to credit Dr. Case's opinion, if it was supported by the record. *See Brown v. Astrue*, 611 F.3d 941, 951, 954 (8th Cir. 2010) (affirming ALJ's decision to give greater weight to opinion of claimant's treating psychiatrist than to opinion of her family physician when claim was based on mental health issues). Although Dr. Case's opinion is not supported by the record as a whole, because he is a neurologist, this factor weighs slightly in favor of giving the opinion more weight.

### vi.    *Other factors*

Claimant argues in his reply brief that Dr. Case stated that Claimant "had an inability to walk in excess of 200 feet without assistance on September 17, 2015, (AR

489) [sic] Thus, Dr. Case does give a specific limitation." (Doc. 19 at 2 ¶ 3) (citation in original).

I am not sure what this argument is in response to. The Commissioner does not assert that the ALJ did not place restrictions on Claimant's ability to walk and, indeed, the ALJ assigned a sedentary RFC, which is consistent with a walking restriction.[7] In her brief, the Commissioner noted only the following from treatment notes with respect to walking: In November 2014, Claimant had "a normal gait, was able to walk on his heels and toes" (AR at 382-83); in April 2015, Claimant had a slow gait (*Id.* at 466); and in May 2017, Claimant had a normal gait (*Id.* at 651). None of these statements addresses Claimant's ability to walk more than 200 feet with or without assistance.

Dr. Case's statement regarding Claimant's walking limitation is contained in a September 16, 2015 one-sentence letter addressed "To Whom May Concern," stating the above walking limitation, and concluding that this limitation means that Claimant "meets the definition of 'handicapped' because of his inability to walk more than 200 feet without assistance." (*Id.* at 489.) I find that this opinion letter is not supported by Dr. Case's own treatment notes, none of which document distance limitations or difficulties after walking, other than a "slow gait," as mentioned above. Claimant did perform twenty-five-foot walking tests for Dr. Case, but there is no mention of the tests being fatiguing or of Claimant needing any assistance with the tests or after completing the tests. (*Id.* at 457, 460, 463, 466.) The record does not contain documentation that Claimant ever took a 200-foot walking test. The narrative sections of Dr. Case's treatment notes do not document walking difficulties that Claimant discussed with Dr. Case or that Claimant discussed using a cane or another kind of assistive device when walking, although his

---

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. §§ 404.1567(a), 416.967(a).

walking was described as "quite slow for age with slow turns." (*Id.* at 463.) Accordingly, I find Claimant's argument that he has a documented 200-foot walking distance limitation to be without merit because the Commissioner never argued Claimant should not have any walking limitation; the pages of the record cited by the Commissioner in her brief are not at odds with a walking distance limitation; and Dr. Case's 200-foot walking distance limitation is not supported by his own treatment notes, which never mention Claimant's need for assistance when walking more than 200 feet. In addition, no other treatment notes in the record document a walking-distance limitation. Thus, the record as a whole does not support Dr. Case's 200-foot walking distance limitation.

### c. Conclusion

After a thorough review of the entire record, I find that Claimant's contention that the ALJ "rejected" Dr. Case's opinion is without merit because the ALJ assigned Dr. Case's opinion "little weight," rather than no weight. (*Id.* at 30.) In addition, I find that the ALJ's opinion regarding Dr. Case's opinion is supported by substantial evidence on the record as a whole and should not be disturbed. Accordingly, I recommend that the ALJ's decision on this issue be affirmed.

### 2. Dr. John Bertoni

On May 11, 2015 Dr. Bertoni completed a one-page, check box form at the request of Claimant's attorney. (AR at 470.) On this form, Dr. Bertoni stated that he began treating Claimant for Parkinson's disease in November 2014. (*Id.*) After that, the form asked only two questions, the texts of which are reproduced below in their entirety, along with Dr. Bertoni's answers:

> Please check any of the following which either accurately describe your patient's condition or are medically equivalent:
> ✓    Significant Rigidity
> ✓    Bradykinesia

Do the conditions listed above produce any of the following limitations?
✓     Sustained disturbance of gross and/or dexterous movement
✓     Sustained disturbance of gait and/or station

(*Id.*) Dr. Bertoni provided no support for his conclusions, no citations to medical records, and no explanations for his answers. (*Id.*) The ALJ gave this opinion "little weight" because Dr. Bertoni did not support his opinion with references to medical evidence and because the record on the whole did not support Dr. Bertoni's conclusions. (*Id.* at 30.)

### b. Analysis

#### i. Examining Relationship

"Generally, [ALJs] give more weight to the medical opinion of a source who has examined [a claimant] than to the medical opinion of a medical source who has not examined [a claimant]." 20 C.F.R. § 404.1527(c)(1). However, a treating source's opinion may be disregarded in favor of other opinions if it is not supported by substantial evidence in the record. *Casey*, 503 F.3d at 692. Dr. Bertoni stated that he had been treating Claimant for six months at the time that he filled out his check-blank opinion form. (AR at 470.) However, I can find no treatment notes from Dr. Bertoni in the record that document this treatment relationship and Claimant does not direct the Court to any notes. As discussed below, I find that Dr. Bertoni's opinion is not supported by substantial evidence on the record as a whole, and therefore, his opinion is entitled to little weight.

#### ii. Treatment Relationship

"Generally, [ALJs] give more weight to the medical opinions from [a claimant's] treating sources. . . . When the treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment, [the ALJ] will give the source's opinion more weight than . . . if it were from a nontreating source." 20 C.F.R. at § 404.1527(c)(2)(i). In addition, "the more

knowledge a treating source has about [a claimant's] impairment(s), the more weight the [ALJ] will give the source's opinion." *Id.* at § 404.1527(c)(2)(ii). Dr. Bertoni is supposedly Claimant's treating source. However, the record does not show if Claimant saw him once in the six months since they began their treatment relationship or if Claimant saw Dr. Bertoni more often than that. It appears that Dr. Case, Claimant's primary neurologist, originally referred Claimant to Dr. Bertoni at the Movement Disorders Center (AR at 460), but that Claimant actually saw Dr. Bhatti. Dr. Case only mentioned Dr. Bhatti after Claimant started treatment at the Movement Disorders Center. (*See, e.g.*, at 463-65, 483.) Because there is no documentation of how many times Claimant saw Dr. Bertoni, this factor is neutral.

### iii.    *Supportability*

"The better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). Dr. Bertoni did not say what he based his opinions on, only giving the date that he started treating Claimant as some clue to the depth of their doctor-patient relationship. (AR at 470.) Dr. Bertoni has no treatment notes in the record. Accordingly, his opinion is entirely unsupported on that basis. In addition, the check box format used for this opinion is about as cursory and perfunctory as possible. The opinion also limits the author's choices and thus its value by only providing two options for each query. The options, themselves, assume that the patient at issue is already experiencing "significant" or "sustained" symptoms from his Parkinson's disease, except for bradykinesia. Notably missing is documentation of, or at least citation to, any tests Dr. Bertoni ran and the results of those tests, any clinical observations, or any narration of impressions from time spent with Claimant. (*Id.*)

As discussed above, a treating source's opinion can be given limited weight if it contains only conclusory statements or inconsistent opinions "that undermine the

credibility of such opinions." *Papesh*, 786 F.3d at 1132. The cursory checklist format, limited options, and total lack of support in the opinion lead me to agree with the ALJ's conclusion that Dr. Bertoni did not "include references to the medical evidence to support these brief statements." (AR at 30.) Therefore, this factor weighs in favor of giving the opinion little weight.

### iv. Consistency

"Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4). In support of his conclusion that Dr. Bertoni's opinion is not supported by other evidence in the record as a whole, the ALJ cited specific pages in the record that contradicted Dr. Bertoni's conclusions. (*Id.* at 30.) After reviewing the record, I agree with the ALJ that Dr. Bertoni's limitations are not supported by the record on the whole. Although there is support for some of Dr. Bertoni's conclusions (i.e., some rigidity and bradykinesia (*Id.* at 381, 448, 451, 456, 459, 463, 466, 474-75, 687, 722)), there is also support for Claimant having full strength, which undermines a finding of bradykinesia (*Id.* at 381, 751, 759, 783). In addition, I find there is no support for his findings of sustained disturbance of gross and/or dexterous movement or sustained disturbance of gait and/or station. (*See id.* at 390 (full range of motion in neck); 448 (no discernable obvious tremor, other than occasional flicker); 564 (normal range of motion in hands and arms); 381, 564, 716, 751, 760, 767, 783, 793 (full range of motion in upper extremities); 381, 751, 767, 784, 793 (hand tremors rated "slight and infrequent" to "moderate" with action); 454 (gait normal speed); 457, 460, 463, 466 (completed 25-foot walking test with no reported anomalies, except slow rate for age); 382-83, 753, 761, 768, 786 (normal, if slow, gait); 466, 481, 627 (able to twist, stoop down, and bend at waist and attach a paper clip with both hands).) Therefore, I agree with the ALJ's conclusion that Dr. Bertoni's opinion is not consistent with the record as a whole. (*See*

*id.* at 30 (citing *Id.* at Ex. F at 66 [AR at 648-51]).) I further find that this factor weighs in favor of giving Dr. Bertoni's opinion little weight.

### v. *Specialization*

"[The ALJ will] generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). Dr. Bertoni is a board-certified neurologist who gave an opinion in his area of expertise about a patient under his care. (AR at 470.) Therefore, the ALJ was required to credit Dr. Bertoni's opinion, if it was supported by the record. *See Brown*, 611 F.3d at 951, 954. As discussed above, Dr. Bertoni's opinion is not supported by the record, not even with his own treatment notes. Therefore, this factor is neutral.

### vi. *Conclusion*

After a thorough review of the entire record, I find that the ALJ's opinion regarding Dr. Bertoni's opinion is supported by substantial evidence on the record as a whole and should not be disturbed. Accordingly, I recommend that the ALJ's decision on this issue be affirmed.

### 3. *Dr. Danish Bhatti*

Claimant's entire argument related to Dr. Bhatti follows:

> The University of Nebraska Medical Center progress notes on the Plaintiff are by Danish Bhatti, M.D., who is assistant professor at the Department of Neurological Sciences and Director of the movement disorder program at the University of Nebraska Medical Center. (AR 385, 797) Dr. Bhatti has been involved throughout Plaintiff's treatment at UNMC. Dr. Bhatti's findings are really not addressed in the ALJ's opinion nor does it state what weight is given to those records.

(Doc. 19 at 1 ¶ 2.) From this paragraph, I assume Claimant argues that the ALJ did not properly consider Dr. Bhatti's treatment notes. I find, however, that the ALJ clearly did so. The ALJ's five citations to Exhibit 17F are citations to Dr. Bhatti's treatment notes.

(AR at 29.) In addition, the ALJ's eight citations to Exhibit 1F pages 4 and 8 (AR at 28-31), are citations to treatment notes from one of Claimant's appointments with Dr. Bhatti. AR 385, cited by Claimant, is the last page of treatment notes from that same appointment and contains nothing substantive that I can discern. Page AR 385 merely contains a wrap-up of Dr. Bhatti's notes from a November 7, 2014 appointment wherein Dr. Bhatti explains what he discussed with Claimant during the appointment. In addition, AR 797, to which Claimant refers, is merely a reproduction of Exhibit 16F pages 67-68. The ALJ cited Exhibit 16F page 67 three times in his decision. (AR 28-29.) The ALJ also cited Dr. Bhatti's treatment notes in other places throughout his decision. (*See id.* at 28-31 (citing Exs. 16F and 17F, which contain Dr. Bhatti's treatment notes).) Therefore, I find the ALJ thoughtfully considered Dr. Bhatti's treatment notes and used them to support his conclusions.

Finally, contrary to Claimant's assertion, an ALJ is not required to "weigh" findings, records, or treatment notes. The rules require ALJs to weigh physician's "opinions." *See* 20 C.F.R. §§ 404.1520c, 404.1527. The record does not contain an opinion written by Dr. Bhatti. To the extent Claimant interprets AR 385 and AR 797 as opinions, as discussed above, AR 385 is merely the last page of treatment notes from the initial examination Dr. Bhatti conducted of Claimant and it summarizes what Dr. Bhatti and Claimant discussed during the examination. The ALJ actually cited other pages of treatment notes from this examination to support his findings that Claimant was encouraged to exercise, which contradicted Claimant's claim that his condition was as limiting as described (AR at 28 (citing Ex. 1F at 8 [AR 384]); that Claimant did not exhibit severe cognitive limitations (*Id.* (citing Ex. 1F at 4 [AR 380])); and that Claimant had a full range of motion (*Id.* at 30 (citing Ex. 1F at 4 [AR at 380]).

AR 797 is also a page of treatment notes, not an opinion. The ALJ also cited this page to support his finding that Claimant was encouraged to exercise, which contradicted

Claimant's claim that his condition was as limiting as described. (*Id.* at 28 (citing Ex.16F at 67 [AR 797].) In addition, the ALJ cited this page to document Dr. Bhatti's finding that Claimant had myoclonic tremors in his hands and that he prescribed physical therapy and told Claimant to increase his exercise time. (*Id.* at 29.) Accordingly, I find the ALJ did not fail to weigh an "opinion" or to properly consider treatment notes written by Dr. Bhatti. Therefore, I recommend the ALJ's decision related to how he considered and used Dr. Bhatti's notes be affirmed.

### 4.       State Agency Physicians Matthew Byrnes, D.O. and John May, M.D.

On April 29, 2015, Dr. Matthew Byrnes reviewed the record for the state agency and opined that Claimant could perform light work. (AR at 104.) Specifically, Dr. Byrnes stated that Claimant could sit, stand, and/or walk, for a total of six hours in an eight-hour workday; could occasionally lift and carry 20 pounds and frequently carry 10 pounds; could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; could perform limited overhead reaching, handling, and fingering bilaterally; and must avoid concentrated exposure to extreme heat and cold, vibration, and workplace hazards, but could handle unlimited exposure to wetness and noise. (*Id.* at 98-100.) On August 10, 2015, Dr. John May affirmed Dr. Byrnes's opinion in conjunction with Claimant's appeal of the original denial of his benefits claim. (*Id.* at 131.) For his review, Dr. May reviewed the entire record and considered new evidence consisting of Claimant's then-most current treatment notes from June 3, 2015 and Claimant's statement that his symptoms were getting worse. (*Id.*)

The ALJ gave these opinions "minimal weight" because Claimant's Parkinson's disease and shoulder impingements precluded him from doing the weight lifting required for "light exertional activities." (*Id.* at 30.) The ALJ determined that Drs. Byrnes and May did not adequately consider the combination of Claimant's impairments and did not

have the benefit of examining the hearing evidence. (*Id.* at 30-31.) Rather, the ALJ determined that the medical evidence, which included evidence of "some tremors, a slower gait," and "constant medical examinations to measure the progression" of [Claimant's] Parkinson's, supported a finding that Claimant was only capable of performing work at a sedentary level. (*Id.* at 31) (citing multiple pages from the record for support.)

Claimant's entire argument related to the weight the ALJ assigned to these opinions follows:

> Given [Claimant's] Parkinson's and shoulder impingements in weight lifting and his tremors[,] slower gait[,] and the progression of his Parkinson's, the ALJ believed that he could not perform light work. (AR 30-31)

> In *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000), the Eighth Circuit stated that the "opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole." *Id.* at 858. The court held where there was no medical evidence about how the claimant's impairments affected his present ability to function, and where the ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of the claimant's RFC, the ALJ did not satisfy his duty to fully and fairly develop the record. *Id.*

> Thus, the ALJ not only rejected the opinions of the treating doctors that he was disabled, but also rejected the opinion of the state examining doctor that he can do light work and selected on his own that [Claimant] could do sedentary work when it is not supported by any of the medical evidence.

(Doc. 17 at 4.) Claimant's argument is somewhat puzzling because a sedentary RFC is more Claimant-friendly than a light-work RFC.[8] A Claimant should want the Court to

---

[8] As the Commissioner asserts, "the ALJ essentially gave [Claimant] the benefit of the doubt and provided him with additional limitations, beyond those the state agency physicians assessed, to the extent consistent with the record as a whole." (Doc. 18 at 10) (citing AR at 31.)

affirm this decision of the ALJ, at least as an alternative to finding Claimant disabled. However, giving Claimant's argument a generous read, he seems to be arguing that the ALJ rejected all medical evidence and made up an RFC out of whole cloth. That, I find, the ALJ did not do.

"Where an ALJ does not rely on opinions from treating or examining sources, there must be some other medical evidence in the record for the ALJ's opinion to be supported by substantial medical evidence on the record." *Shuttleworth*, 2017 WL 5483174, at *7 (citation omitted). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner*, 499 F.3d at 848 (quotation omitted).

I conclude that although the ALJ did not give any particular medical opinion controlling weight, he did rely on supporting evidence from medical opinions in crafting the RFC. *See Shuttleworth*, 2017 WL 5483174, at *7 (noting that the ALJ attributed "little weight," rather than "no weight" to opinion of treating physician). Specifically, the ALJ considered the medical evidence in the record, and gave some weight to each of the opinions in the record: little weight to Dr. Case's and Dr. Bertoni's opinions and minimal weight to Dr. Byrnes's and Dr. May's opinions. The ALJ included limitations from the various opinions contained in the record in his RFC. Again, the RFC provides:

> Claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), except the following: he remains unable to frequently push and pull, reach overhead, handle and finger. He can occasionally stoop, kneel, crouch, and crawl. He is unable to climb ladders and he should avoid exposures to hazards such as unprotected heights and the operation of motor vehicles. He cannot perform work that requires exposure to sustained and concentrated extreme temperatures or vibration.

(AR at 27.)

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.

20 C.F.R. §§ 404.1567(a), 416.967(a).

The RFC incorporates the following limitations from Dr. Case's opinion: Claimant can sit eight hours out of an eight-hour work day, can stoop occasionally, can occasionally lift ten pounds or less, and is unable to climb ladders. The RFC incorporates bradykinesia from Dr. Bertoni's opinion by limiting the amount of weight Claimant can lift. The RFC incorporates the opinions of Drs. Byrnes and May by limiting Claimant to kneeling, crouching, and crawling occasionally; by not being exposed to extreme temperatures or vibration; and by avoiding "exposures to hazards such as unprotected heights and the operation of motor vehicles," which Drs. Byrnes and May covered under the umbrella of "workplace hazards." (AR at 98-100.) I further find that the remaining limitations in the RFC—the abilities to "frequently push and pull, reach overhead, handle and finger"—are supported by substantial evidence on the record as a whole. (*See, e.g. id.* at 381, 475, 481, 671, 751, 760, 793) (limitations supported in the record and no healthcare provider mentioned any limits on pushing or pulling).

In conclusion, I find that the ALJ based his RFC on medical evidence in the record and recommend that the ALJ's decision on this issue be affirmed, including how he weighed the opinions of the state agency physicians.

**B.** *The ALJ properly weighed Claimant's subjective complaints.*

When a claimant suffers from a severe impairment, but the impairment does not meet or equal a disabling impairment listed in the regulations, the ALJ "will consider the impact of [the claimant's] impairment(s) and any related symptoms, including pain, on

[the claimant's] residual functional capacity." 20 C.F.R. § 404.1529(d)(4). This determination involves a two-step process in which the ALJ (1) first decides whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms and then (2) evaluates the intensity and persistence of claimant's symptoms. *Id.* § 404.1529(b),(c). When evaluating a claimant's subjective complaints during the second step, the ALJ considers the objective medical evidence, the Claimant's work history, and evidence relating to the following factors ("the *Polaski* factors"): (1) the claimant's daily activities; (2) the duration, frequency and intensity of the symptoms; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) the claimant's functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529(c)(3).[9] An ALJ is not required to "methodically" discuss each *Polaski* factor as long as the ALJ "acknowledge[es] and examin[es] those considerations before discounting [a claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (*citing Brown v. Chater*, 87 F.3d 963, 966 (8th Cir.1996)).

After considering the factors and evidence, the ALJ determines the extent to which the claimant's symptoms affect the claimant's capacity to perform basic work activities. 20 C.F.R. § 404.1529(c)(4). The claimant's "symptoms, including pain, will be determined to diminish [the claimant's] capacity for basic work activities to the extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

---

[9] The Code of Federal Regulations includes these additional factors: (1) other treatment the claimant receives for pain relief; and (2) measures the claimant uses to relieve pain "(e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." 20 C.F.R. § 404.1529(c)(3)(v), (vi).

In this case, the ALJ found at the first step that Claimant had medically determinable impairments that could reasonably be expected to cause his alleged symptoms. (AR at 28.) At the second step, the ALJ found that Claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent" with the evidence in the record. (*Id.*) To support this determination, the ALJ noted that in spite of his allegations that his Parkinson's disease weakened his grip; caused him difficulty squatting, bending, reaching, walking, kneeling, talking, climbing stairs, balancing, and using his hands; and that he suffered from bilateral hand tremors and decreased concentration (*Id.* at 28), Claimant could perform household chores, maintain social relationships, complete shopping errands, drive, go fishing, and use a computer. (*Id.*) The ALJ also stated that although the medical records did describe some symptoms, they did not document symptoms at the level Claimant described. (*Id.*) Specifically, the ALJ noted that Claimant's physicians consistently encouraged him to exercise and be active; that treatment notes do not disclose severe tremors, loss of grip strength, an inability to write legibly, or severe cognitive limitations. (*Id.*) On the contrary, the ALJ stated that physicians' treatment notes indicated that Claimant had full range of motion, intact neurological senses, and "normal strength throughout his musculoskeletal systems." (*Id.*) The ALJ provided extensive citations to the record to support his conclusions. (*See id.*) The ALJ discussed particular evidence in the record that contradicted Claimant's subjective complaints. (*Id.* at 28-30.)

After conducting a review of the record, I agree that the record on the whole does not support Claimant's subjective complaints and find that the ALJ properly evaluated the *Polaski* factors, even though he did not enumerate them or mention *Polaski* by name. A factor-by-factor breakdown indicating where the ALJ discussed each of the *Polaski* factors follows. I will address factors (2), (3), and (5) together because Claimant seems to make the same argument related to those factors.

**(1) Claimant's daily activities.** (*Id.*) (citing Exs. 5E and 17F at 43 and Claimant's Hr'ing Test.) (noting that Claimant drives three and one-half hours and drove one-hour each way on a trip the day before the hearing in this case; performs household chores such as simple meal preparation, loading and unloading dishwasher; maintains social relationships; goes shopping; goes fishing on weekends; and uses a computer).

Claimant correctly asserts that being able to perform simple household chores is not necessarily an indication that someone can work fulltime. The Eighth Circuit "has repeatedly stated that a person's ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity." *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 2003); *see also Leckenby v. Astrue*, 487 F.3d 626, 634 (8th Cir. 2007) (holding that claimant's ability to fold laundry, shop once a week, watch her children at independent play, drive short distances about three times a month, and watch television and listen to music before dozing off or losing concentration did not mean she had the ability to work fulltime). In short, a claimant need not prove a disability renders him "bedridden" or unable to engage in "all productive activity" before he qualifies for benefits. *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999). This would be problematic for the ALJ's decision if the ALJ had relied solely on Claimant's ability to perform daily chores, drive, shop, and fish to conclude that Claimant was not disabled. However, as demonstrated by the rest of the ALJ's analysis and decision, the ALJ relied on physician's treatment notes, which contained the results of objective medical testing, to support his decision in this case. Furthermore, that the ALJ mentioned these daily activities was also not a problem because the ALJ was required to assess Claimant's daily activities as one the *Polaski* factors he must weigh when deciding a case in which subjective complaints are at issue. Therefore, I find that Claimant's argument related to subjective complaints is without merit.

**(2) The duration, frequency, and intensity of Claimant's symptoms.** (AR at 28-29) (citing Exs. 1F at 4, 8; 2F at 4; 4F at 5; 7F at 19-20; 15F at 15; 16F at 51, 66-67, 131, 137; 10F at 7) (encouraging Claimant to participate in an exercise program and to exercise daily, finding that examination results did not describe severe tremors, loss of grip strength, hand impairment, an inability to write legibly, or severe cognitive limitations; and concluding that Claimant's symptoms are not as limiting as described, but rather that examinations consistently showed full ranges of motion, in spite of varying degrees of rigidity; intact neurological senses; the ability to use a paper clip; the ability to rise normally from a chair and to walk on his heels and toes; normal gait; and normal strength; no deterioration of symptoms; and no change in Parkinson's symptoms);

**(3) Precipitating and aggravating factors** (*Id.* at 29) (citing Ex. 17F at 42) (stating that Claimant's "most bothersome symptoms were tremors at peak dose times and if he does not take his medications, his symptoms increased" and noting that at this examination, Claimant's medication regimen was changed, and invasive tremors were not noted as a problem in future treatment notes); **and**

**(5) Claimant's functional restrictions**. (*Id.*) (citing Ex. 16F at 66-67, 17F at 50, Claimant's Hr'g Test.) (noting that in spite of having myoclonic tremors in his hands, results of a May 2017 examination showed intact memory; full ranges of motion; full muscle strength; normal gait; the ability to rise normally from a chair, to walk on his toes and heels, and to walk in a tandem gait.[10] The ALJ also noted that the results of "extensive ambulation testing" done less than one month before the hearing were normal and discussed how Claimant's testimony supports a conclusion that Claimant can perform sedentary work.)

---

[10] Tandem gait is "a gait used in neurologic assessments; the patient is told to walk in a straight line and at the end of each step to touch the heel of the front foot to the toe of the foot behind." *Dorland's supra* note 6, at 754.

Claimant argues that the ALJ failed to consider the progressive nature of Parkinson's disease and how his loss of strength and dexterity and other Parkinson's symptoms make it impossible for him to work. Claimant asserts that he "is not making this up" and that he is credible. (Doc. 17 at 7.) Claimant cites a single treatment note from his first appointment with Dr. Bhatti for support. In that November 7, 2014 treatment note, Dr. Bhatti begins the "Assessment" portion of his notes in the following way: "Stage 2 Parkinsonism: 45 year old male with young onset parkinsonism starting around age 43-44 with relatively rapid progression and decreased response to medications." (AR at 383, 753.)

While this treatment note acknowledges the rapid progression Claimant was experiencing at the time, and the progressive nature of Parkinson's disease, in general, it does not account for the symptom improvement Claimant has experienced over the years after trying new medication regimens. (*See id.* at 465 (Claimant reported "doing fairly well"), 530[11] ("[patient] doing ok") 719 (improved walking with medication), 797 (three weeks before hearing, medication improved dyskinesia,[12] although Claimant was noticing increasing stiffness and rigidity and was having myoclonic tremors[13] on day of examination).) In addition, Dr. Bhatti described Claimant's tremors as "absent" or "slight," with occasional "mild" or "moderate" tremors (*Id.* at 381, 751, 767, 784, 793); Dr. Case reported only slight tremors (*Id.* at 451 (subtle intermittent left hand tremor)); 453 (minimal or no tremor); 454 (subtle intermittent left hand possible right hand tremor);

---

[11] The ALJ cites to AR 528 (Ex. 15F at 15), which I believe was an inadvertent typographical error. (AR 29.) The quoted "ok" appears at AR 530 (Ex. 15F at 17).

[12] Dyskinesia is "distortion or impairment of voluntary movement, as in tic, spasm, or myoclonus." *Dorland's supra* note 6, at 578.

[13] Myoclonic tremors are "involuntary trembling or quivering" caused by "shocklike contractions of a portion of muscle, an entire muscle, or a group of muscles." *Dorland's supra* note 6, at 1957, 1222.

457, 459, 463, 466 (no tremor)).  Moreover, on the day before the hearing, Claimant had a full day of activities that included driving one hour each way to visit someone.

Accordingly, I find that the ALJ properly evaluated the duration, frequency, and intensity of Claimant's symptoms; precipitating and aggravating factors; and Claimant's functional restrictions.  The ALJ's decisions related to these *Polaski* factors are supported by substantial evidence in the record as a whole because, as discussed here and in Section III.A., *supra*, Claimant has an intact memory and cognitive skills; full ranges of motion (although sometimes with difficulty) and full muscle strength on objective medical tests; and Claimant's symptoms have been helped with medication.

**(4) Dosage, effectiveness, and side effects of medication.** (AR at 29.)  As discussed above, the ALJ noted that Claimant has experienced symptom relief as his doctors changed his medications in response to side-effects or other issues.  (AR at 719, 797.)  As the ALJ also noted, Claimant's physicians have also consistently prescribed physical therapy and exercise.  However, the record does not indicate that Claimant attended physical therapy or that he did home exercises as prescribed.  Dr. Bhatti even twice suggested that Claimant ask his local gym for a scholarship if cost was a barrier to membership (*Id.* at 788, 797), but, again, there is no indication Claimant followed through with this suggestion.  The record does not contain any physical therapy records and it does not appear that Claimant discussed having done exercises with his health care providers because his providers did not note such conversations.  Claimant also did not mention doing exercises when asked about his daily routine at the hearing.  (*Id.* at 71-73.)  A claimant's failure to follow a course of prescribed treatment undermines the claimant's disability claim.  *See Wagner*, 499 F.3d at 851-52; *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) ("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits."); *Holliman v. Colvin*, No. 3:15-CV-00371 JTK, 2016 WL 6780305, at *2 (E.D. Ark. Nov.

15, 2016) (citing *Roth* and holding that when there was no record that claimant attended prescribed physical therapy, claimant's claims of pain were undermined).

Based on the above analysis, I find that the ALJ properly considered Claimant's subjective complaints, discussed all the *Polaski* factors, and supported his decision on this issue by citing substantial evidence on the record as a whole. Therefore, I recommend that the District Court affirm the ALJ's decision on this issue.

**C.    *The ALJ posited an appropriate hypothetical to the vocational expert.***

"A vocational expert's testimony based on a properly phrased hypothetical question constitutes substantial evidence." *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) (quotation omitted). "A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true." *Id.* "The question "must capture the concrete consequences of the claimant's deficiencies" but "may exclude any alleged impairments that [the ALJ] has properly rejected as untrue or unsubstantiated." *Perkins v. Astrue*, 648 F.3d 892, 902 (8th Cir. 2011) (quotations omitted).

At the hearing, the ALJ posed hypothetical situations to the vocational expert Holly Berquist Neal ("the VE"). The ALJ's third hypothetical encompassed the RFC the ALJ eventually adopted:

> Claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), except the following: he remains unable to frequently push and pull, reach overhead, handle and finger. He can occasionally stop, kneel, crouch, and crawl. He is unable to climb ladders and he should avoid exposures to hazards such as unprotected heights and the operation of motor vehicles. He cannot perform work that requires exposure to sustained and concentrated extreme temperatures or vibration.

(AR at 27, 80-81.)  The VE responded that an individual with these limitations could work as a document preparer, telephone quotation clerk, or addressing clerk. (*Id.* at 82.)

In hypothetical four, the ALJ changed the ability to finger frequently to the ability to finger occasionally. (*Id.*) The VE testified that changing the fingering ability would eliminate all of the jobs she had previously identified, and that only one job would now fulfill the requirements: callout operator.[14] (*Id.*) The VE further testified that a person could still perform all of the above jobs if he had to stretch for a full minute out of every hour to "increase his comfort." (*Id.* at 83-84.) The VE also testified that if the hypothetical was changed so that the person could only occasionally reach and was limited to infrequent handling and fingering, 93% of jobs are no longer available. (*Id.* at 87.) Moreover, if someone had to miss work three days a month, that would exceed what an employer would allow because most employers will only tolerate employees missing one day of work a month. (*Id.* at 88.)

Claimant makes the following argument regarding the hypothetical:

> The hypothetical of the ALJ as to the sedentary work that the ALJ relied upon does not take into account the complete limitations of the Plaintiff. Sedentary work is not supported by the medial record of the treating physician. Dr. Case says he cannot work. The hypothetical does not include the restrictions and limitations pointed out by the University of Nebraska Medical regarding the tremors, his limitations in reaching, his problems with his gait, problems remembering things and the problems he has in being understood when he speaks. In addition as pointed out, he suffers from fatigue and tiredness. All these limitations were ignored by the ALJ in the hypothetical. Furthermore, the ALJ did not take into account the statement of Dr. Case that suggests his inability to work.

---

[14] A call-out operator "[c]ompiles credit information, such as status of credit accounts, personal references, and bank accounts to fulfill subscribers' requests, using telephone. Copies information onto form to update information for credit record on file, or for computer input. Telephones subscriber to relay requested information or submits data obtained for typewritten report to subscriber." United States Dept. of Labor, Office of Admin. Law Js. L. Libr., *Dictionary of Occupational Titles* (4th ed., rev. 1991), Occupational Group Arrangement, https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT02B.HTM, 237.367-014 (listing typical duties associated with each job title) (last visited April 18, 2019).

(Doc. 17 at 10-11.)  Claimant also argues that the job of callout operator is inappropriate for Claimant because he has "problems with his voice and being heard." (*Id.* at 9.)

First, after reviewing Dr. Case's opinion and "To Whom it May Concern" letter, I find no place where Dr. Case states that Claimant cannot work.  Although Dr. Case states in his letter that Claimant is disabled, he does not say Claimant cannot work. People with disabilities work every day.  *See, e.g.*, Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*; Iowa Code § 216.6(1)(a):

> It shall be an unfair or discriminatory practice for any [p]erson to refuse to hire . . . or to otherwise discriminate in employment against any applicant for employment or any employee because of the . . . disability of such applicant or employee, unless based upon the nature of the occupation. If a person with a disability is qualified to perform a particular occupation, by reason of training or experience, the nature of that occupation shall not be the basis for exception to the unfair or discriminatory practices prohibited by this subsection.

In Dr. Case's opinion, he checked the blank indicating that Claimant is capable of working in a low stress job.  (AR at 469.)  Dr. Case had the option to check that Claimant was incapable of working, but did not do so.  (*Id.*)  And, as discussed in Part III.A.i., *supra*, Dr. Case put limits for Claimant's work capabilities, indicating that Claimant was, indeed, able to engage in some kind of work.  (*Id.* at 467-69.)  Finally, even if Dr. Case had opined that Claimant could not work, that opinion would have been disregarded because the decision regarding whether a claimant can work is "reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (quoting *Stormo*, 377 F.3d at 806).

Second, when Claimant refers to "the University of Nebraska," I assume he means Dr. Bertoni and Dr. Bhatti because that is where these physicians work.  However, Claimant cites no specific records to support his argument and thus leaves the Court in

the position of guessing at his arguments, which is not the Court's job. *See Singer v. Harris*, 897 F.3d 970, 980 (8th Cir. 2018) (holding that when plaintiff did not direct the court to a place in the record where it could find alleged errors, the court would only consider the arguments that were supported by appropriate citations) (citing *Manning v. Jones*, 875 F.3d 408, 410 (8th Cir. 2017)); *see also ASARCO, LLC v. Union Pac. R.R. Co.,* 762 F.3d 744, 753 (8th Cir. 2014) ("Judges are not like pigs, hunting for truffles buried in briefs or the record.") (noting internal quotation marks omitted); *Perrigo v. Colvin*, No. 12-CV-4102-DEO, 2014 WL 1234479, at *7 n.3 (N.D. Iowa Mar. 25, 2014) (same) (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991)). That being said, I have already found that the ALJ properly weighed Dr. Bertoni's opinion because Claimant often had full muscle strength; normal, although slow, gait; and full range of motion.

Third, as discussed above, Dr. Bhatti did not write an opinion, and as a neutral decision-maker, the Court cannot go "hunting for [Claimant's arguments] buried in . . . the record." *ASARCO,* 762 F.3d at 753; *Perrigo*, 2014 WL 1234479, at *7 n.3. I have, however, considered all the evidence in the record, *see Vester*, 416 F.3d at 889, including Dr. Bhatti's treatment notes that documented only slight to moderate tremors and strength of 5/5. (AR at 381, 751, 767, 784, 793.) In addition, after "extensive ambulation testing," Dr. Bhatti consistently found Claimant's gait to be normal, if slow. (*Id.* at 753, 761, 768, 776, 786, 796.) Claimant always got normal results on Dr. Bhatti's cognitive and mental examinations (*Id.* at 380, 750, 758, 773, 783, 792) and always had full range of motion with his upper extremities, in spite of having varying degrees of rigidity on any given day (*Id.* at 381, 751, 760, 767, 783, 793). Dr. Bhatti did diagnose Claimant

with hypophonia[15] and documented Claimant's slurred and soft speech, but noted that Claimant's speech was understandable during all but his first examination in November 2014. (*Id.* at 381 (first exam—noting speech difficult to understand), 758, 759, 765, 766, 773, 774, 792, 793.) Moreover, at the hearing in this matter, except for two instances where he had to ask Claimant to speak more loudly (*Id.* at 46, 77), the ALJ never said he had difficulty understanding Claimant's words and the transcript is very clean, which indicates that the court reporter was also able to understand Claimant. Claimant testified that the day before the hearing in this matter, he had a full day of activities and did not mention the need to take a rest or a nap. (*Id.* at 72-73.) In addition, the record does not indicate that Claimant needs to take prolonged rest breaks during the day that cannot be accommodated in the workplace. Finally, the sedentary RFC is designed to accommodate Claimant's tendency to get fatigued.

Accordingly, I find Claimant's arguments to be without merit. The ALJ included in the hypothetical "all impairments that were accepted by the ALJ as true and excluded other alleged impairments that the ALJ had reason to discredit." *Pearsall*, 274 F.3d at 1220. The hypothetical resulted in an RFC for sedentary work that encompassed Claimant's limitations that are documented in the medical records. Therefore, I recommend that the District Court affirm the ALJ's decision on this issue.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **affirm the decision of the ALJ** and **dismiss Plaintiff's case with prejudice**.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in

---

[15] Hypophonia is "a dysphonia [any impairment of voice; a speech disorder or other difficulty speaking] in which there is decreased phonation, resulting in whispering." *Dorland's supra* note 6, at 579, 904.

accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 16th day of May, 2019.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa