## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

SHAWN ALAN KNIBBE,

            Plaintiff,

vs.

ANDREW M. SAUL, Commissioner of
Social Security,[1]

            Defendant.

No.  C18-4043-LTS

**MEMORANDUM OPINION AND
ORDER ON REPORT AND
RECOMMENDATION**

## I.    INTRODUCTION

This case is before me on a Report and Recommendation (R&R) filed by the Honorable Mark R. Roberts, United States Magistrate Judge.  *See* Doc. No. 21.  Judge Roberts recommends that I affirm the decision by the Commissioner of Social Security (the Commissioner) denying Shawn Alan Knibbe's application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the Act), 42 U.S.C. §§ 401-34, 1381-83f.  Knibbe filed timely objections (Doc. No. 22).  The Commissioner did not file a response.  The background is set forth in the R&R and is repeated herein only to the extent necessary.

## II.    APPLICABLE STANDARDS

### A.    *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole."  *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir.

---

[1] [1] Andrew M. Saul was sworn in as Commissioner of Social Security on June 17, 2019.  Pursuant to Federal Rule of Civil Procedure 25(d), he has been substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th

Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

**B.      *Review of Report and Recommendation***

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*,

333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III.     THE R&R

Knibbe applied for disability insurance benefits and supplemental security income on December 9, 2014, alleging disability beginning December 1, 2014, due to Parkinson's disease, shoulder pain and lack of strength. Doc. No. 21 at 2 (citing AR 24, 303). After a hearing, an Administrative Law Judge (ALJ) applied the familiar five-step evaluation and found that Knibbe was not disabled as defined in the Act. Knibbe argues the ALJ erred by: (1) improperly weighing the medical evidence in the record, (2) improperly considering Knibbe's subjective complaints, and (3) basing the residual functional capacity (RFC) on an improper hypothetical question posed to the vocational expert (VE) during the hearing. Judge Roberts addressed each argument separately.

With regard to the weighing of the medical evidence, Knibbe argues the ALJ erred in "rejecting the opinion of the treating physicians and relying upon the opinions of the non-examining doctors." *Id.* at 7 (citing Doc. No. 17 at 3). He also argues that the ALJ erred by rejecting both the treating physician and state agency physician opinion in favor of the ALJ's own unsupported opinion that Knibbe was limited to sedentary work. *Id.* at 7-8. He argues his testimony was consistent with the limitations and symptoms described in his medical records. Finally, he asserts the ALJ failed to mention the treatment notes of his physician, Dr. Bhatti. *Id.* at 8.

Judge Roberts noted that the record identified Dr. Case, Dr. Bertoni and Dr. Bhatti as Knibbe's treating sources. *Id.* Judge Roberts identified Dr. Case as Knibbe's main

4

treating physician.  Dr. Case provided a medical source opinion on April 9, 2015, in which he opined Knibbe could: sit for eight hours in an eight-hour workday, stand/walk for three hours in an eight-hour workday, occasionally lift ten pounds or less, rarely lift 20 pounds, never lift 50 pounds, occasionally twist and stoop, rarely crouch/squat and climb stairs, never climb ladders, use each of his hands to grasp, turn and twist objects 50 percent of an eight-hour workday, use his fingers for fine manipulation 50 percent of an eight-hour workday and reach (including overhead reaching) 25 percent of an eight-hour workday.  *Id.* at 9 (citing AR 468).  He would also need to shift positions at will from standing, walking and sitting.  *Id.*  Dr. Case found Knibbe's symptoms were rarely severe enough to interfere with the attention and concentration needed to perform simple work tasks, but that Knibbe would be absent from work on average about three days per month.  *Id.* (citing AR 469).

The ALJ gave Dr. Case's opinion "little weight" because it was inconsistent with the medical evidence in the record, did not include "any rationale for these limitations" and was inconsistent with Dr. Case's own treating notes from April 9, 2015.  *Id.* at 9-10.  Judge Roberts agreed that Dr. Case's treatment notes did not provide a basis for his opinion.  *Id.* at 10.  He then considered whether the ALJ's reasons for giving Dr. Case's opinion less than controlling weight were supported by substantial evidence based on the factors under 20 C.F.R. §§ 404.1527(c), 416.927(c).

The first factor is the examining relationship.  Judge Roberts noted that Dr. Case examined Knibbe as his treating neurologist seven times between December 2, 2013, and April 9, 2015, prior to providing his opinion in this case.  *Id.* at 12.  As a treating physician, Judge Roberts noted that Dr. Case's opinion was entitled to greater weight unless it was not supported by substantial evidence on the record as a whole.  For reasons discussed below, he agreed with the ALJ that Dr. Case's opinion was not supported by substantial evidence on the record as a whole.  *Id.*  Judge Roberts considered the examining relationship a neutral factor.

The second factor is the treatment relationship. Given that Dr. Case was a treating source and had treated Knibbe for his Parkinson's disease, Judge Roberts concluded this factor weighed in favor of giving Dr. Case's opinion increased weight. *Id.*

The third factor is supportability. Judge Roberts noted that Dr. Case stated he based his opinion on "physical assessments, over time." *Id.* (citing AR 469). While this indicated some basis for his opinion, Judge Roberts noted that it provided little information to determine whether Dr. Case's conclusions were supported because he did not document the types of deficiencies he noticed, the tests he ran and the interventions he attempted to help mediate Knibbe's symptoms. *Id.* at 12-13. Judge Roberts agreed with the ALJ that the checklist format and lack of support within Dr. Case's opinion justified giving it less weight. *Id.* at 13. Judge Roberts noted the ALJ also found Dr. Case's opinion was inconsistent with his own treatment notes. *Id.* With regard to anticipated absences of three days per month, the ALJ found there was no documentation to support this limitation such as missed appointments or other important events. *Id.* Judge Roberts reviewed Dr. Case's treatment notes and agreed there was no mention of missed events in Knibbe's life among the otherwise comprehensive discussion of all relevant topics covered in Dr. Case's examinations of Knibbe. *Id.* Finally, the ALJ cited inconsistencies in Dr. Case's treatment notes dated the same day as his opinion. *Id.* Dr. Case found that Knibbe exhibited fine finger dexterity, did not have tremors and could twist, stoop and bend at the waist. *Id.* at 14. However, his opinion limited the amount that Knibbe could be expected to perform these tasks in the workplace. Judge Roberts concluded the record supported this reason as well.

While some of the limitations expressed in Dr. Case's opinion were supported by his treatment notes, others were not. For example, Judge Roberts noted there was nothing in Dr. Case's treatment notes to support the lifting limitations he had identified. Indeed, there was no indication that Dr. Case had ever tested Knibbe's lifting limits or that Knibbe had ever reported difficulties with lifting. The only thing close to a lifting limitation

(other than Knibbe's overall diagnosis of generalized bradykinesia[2]), was a March 31, 2014, note stating Knibbe's strength was "normal" and a June 20, 2014, treatment note documenting Knibbe's report that he "[felt] weak and encumbered trying to work overhead." *Id.* (citing AR 454, 456). Judge Roberts reasoned that while there was some evidence in Dr. Case's treatment notes supporting his opinion, there was other evidence that did not. He concluded this factor supported the ALJ's decision to give Dr. Case's opinion little weight.

The fourth factor is consistency. The ALJ determined that Dr. Case's opinion was not supported by other evidence in the record as a whole and cited to specific pages documenting that Knibbe did not have "debilitating tremors or severe range of motion limitations." *Id.* at 14-15 (citing AR 30). Upon reviewing the record, Judge Roberts agreed with the ALJ that Dr. Case's opinion was not supported by the record as a whole and cited specific inconsistencies. He concluded this factor supported giving Dr. Case's opinion limited weight. *Id.* at 15.

The fifth factor is specialization. Judge Roberts noted that Dr. Case is a neurologist who gave an opinion in his area of expertise about a patient under his care. *Id.* While Dr. Case's opinion was not supported by the record as a whole, Judge Roberts concluded that this factor weighed slightly in favor of giving the opinion more weight. *Id.*

Finally, Judge Roberts discussed other factors. With regard to a specific walking limitation of 200 feet without an assistive device that Knibbe cited from a one-sentence letter written by Dr. Case on September 16, 2015, Judge Roberts noted this limitation was not supported by Dr. Case's own treatment notes. *Id.* at 16. He noted the narrative sections of Dr. Case's treatment notes did not document that Knibbe discussed walking difficulties with Dr. Case or that Knibbe reported the need to use an assistive device when

---

[2] A decrease in spontaneity and movement. *See* Stedman's Medical Dictionary 117350 (28th ed. 2006).

walking. *Id.* While Dr. Case described Knibbe's walking as "quite slow for age with slow turns," Judge Roberts noted there was no support in the record for a 200-foot walking distance limitation as Knibbe alleged. *Id.* at 16-17. Judge Roberts concluded that the ALJ's decision to assign "little weight" to Dr. Case's opinion was supported by substantial evidence in the record as a whole. *Id.* at 17.

Judge Roberts next considered the opinion of Dr. Bertoni, who completed a one-page check box form at the request of Knibbe's attorney dated May 11, 2015. *Id.* (citing AR 470). Dr. Bertoni has treated Knibbe for his Parkinson's disease since November 2014. *Id.* Dr. Bertoni marked that Knibbe had significant rigidity and bradykinesia and that those conditions resulted in the following limitations: sustained disturbance of gross and/or dexterous movement and sustained disturbance of gait and/or station. *Id.* This was the entire extent of his opinion. The ALJ gave his opinion "little weight" because Dr. Bertoni did not support his opinion with references to medical evidence and because the record as a whole did not support these conclusions. *Id.* at 18.

Judge Roberts considered the same six factors in analyzing the ALJ's decision with regard to Dr. Bertoni's opinion. As to the examining relationship, Judge Roberts noted that Dr. Bertoni stated he had been treating Knibbe for six months at the time he provided his opinion. *Id.* Judge Roberts noted there were no treatment notes in the record confirming this treatment and found this factor weighed in favor of giving Dr. Bertoni's opinion little weight.

With regard to the "treatment relationship" factor, Judge Roberts concluded this factor was neutral. *Id.* at 19. While the record did not support a six-month treatment relationship, there was evidence that Dr. Case had referred Knibbe to Dr. Bertoni, which suggested he was a treating source at some point.

As to supportability, Judge Roberts noted Dr. Bertoni did not provide any support for his opinions and there are no treatment notes from him in the record. *Id.* He also noted the check box format was cursory and perfunctory and limited the author's choices by providing only two options for each query. The format also assumed that the patient

was already experiencing "significant" or "sustained" symptoms from his Parkinson's disease. There was no documentation or citation to any tests, clinical observations or narration of impressions by Dr. Bertoni in the record. *Id.* Judge Roberts agreed with the ALJ that the lack of references to medical evidence justified giving Dr. Bertoni's opinion little weight. *Id.* at 19-20.

In evaluating the consistency factor, Judge Roberts agreed with the ALJ that although there was some support for some of Dr. Bertoni's conclusions (particularly rigidity and bradykinesia), there was also evidence Knibbe had full strength, which undermined his findings. *Id.* at 20. With regard to his findings of sustained disturbance of gross and/or dexterous movement or sustained disturbance of gait and/or station, Judge Roberts noted there was no evidence in the record to support such a limitation and cited evidence that suggested at most moderate disturbance related to gross and/or dexterous movement, but only with action. *Id.* Judge Roberts concluded this factor weighed in favor of giving Dr. Bertoni's opinion little weight. *Id.* at 21.

Finally, with regard to specialization, Judge Roberts considered this factor neutral given Dr. Bertoni's specialization as a neurologist. However, as noted above, his opinion was not supported by the record. There were no other factors relevant to Dr. Bertoni's opinion and Judge Roberts found the ALJ's decision to give Dr. Bertoni's opinion little weight was supported by substantial evidence in the record as a whole. *Id.*

Judge Roberts next considered the treatment notes of Dr. Bhatti, who did not provide a formal medical opinion. Knibbe argues that the ALJ did not adequately consider or address Dr. Bhatti's findings. *Id.* Judge Roberts disagreed, noting that the ALJ's decision contained five citations to Dr. Bhatti's treatment notes and eight citations to treatment notes from one of Knibbe's appointments with Dr. Bhatti. *Id.* at 21-22. Another exhibit containing Dr. Bhatti's treatment notes was cited three times in the ALJ's decision. Judge Roberts concluded the ALJ thoughtfully considered Dr. Bhatti's treatment notes and used them to support his conclusions.

Contrary to Knibbe's argument, Judge Roberts concluded the regulations do not require the ALJ to "weigh" findings, records or treatment notes. *Id.* at 22 (citing 20 C.F.R. §§ 404.1520c, 404.1527). Rather, the ALJ is required to weigh "opinions" from treating sources and Dr. Bhatti did not provide an opinion in this case. *Id.* Judge Roberts concluded the records cited by Knibbe are treatment notes rather than opinions. The ALJ took the findings in these treatment notes into account when formulating the RFC, but he was not required to "weigh" them as asserted by Knibbe. *Id.* at 23.

Judge Roberts finally considered the opinions of the state agency physicians – Dr. Byrnes and Dr. May. *Id.* The ALJ gave these opinions "minimal weight" because Knibbe's Parkinson's disease and shoulder impingements prevented him from doing the weight lifting required for "light exertional activities" that the state agency physicians opined Knibbe could do. Judge Roberts noted the ALJ found Drs. Byrnes and May did not adequately consider the combination of Knibbe's impairments and did not have the benefit of the hearing evidence. *Id.* at 23-24. Based on the ALJ's review of the medical evidence as a whole, he determined that Knibbe was capable only of performing work at a sedentary level. *Id.* at 24.

Judge Roberts then addressed Knibbe's argument that because the ALJ did not give controlling or great weight to any medical opinion in the record, the ALJ's RFC was not supported by medical evidence. *Id.* (citing Doc. No. 17 at 4). Judge Roberts noted that the ALJ found Knibbe was *more* limited than provided in any of the medical opinions and, while he did not give any particular medical opinion controlling weight, he did rely on supporting evidence from the medical opinions in crafting the RFC. *Id.* at 25. Judge Roberts noted that the RFC incorporated some limitations from each medical opinion and that the remaining limitations in the RFC were supported by medical evidence and substantial evidence in the record as a whole. Judge Roberts found no error with respect to the ALJ's formulation of the RFC based on the medical evidence, including the weight he assigned to the medical opinions. *Id.* at 26.

Judge Roberts then addressed Knibbe's argument that the ALJ erred in discounting Knibbe's subjective complaints. *Id.* He noted the ALJ found that Knibbe's symptoms were not as severe as alleged based on the treatment notes, in which Knibbe's physicians consistently encouraged him to exercise and be active and did not disclose severe tremors, loss of grip strength, an inability to write legibly or severe cognitive limitations. *Id.* at 28. The treatment notes indicated Knibbe had full range of motion, intact neurological senses and "normal strength throughout his musculoskeletal systems." *Id.* The record also contained evidence that Knibbe performed household chores, maintained social relationships, completed shopping errands, drove, went fishing and used a computer. *Id.* Judge Roberts noted the ALJ cited to the record in support of his conclusions and discussed particular evidence that he found inconsistent with Knibbe's subjective complaints. *Id.* After conducting his own review of the record, Judge Roberts agreed that the record as a whole did not support the extent of Knibbe's subjective allegations. He then went on to discuss the ALJ's examination of the individual *Polaski* factors. *Id.* at 29-33. Judge Roberts concluded the ALJ properly considered Knibbe's subjective complaints, discussed all of the *Polaski* factors and supported his decision by citing substantial evidence on the record as a whole.

The final argument Judge Roberts considered was whether the ALJ's hypothetical question to the VE was supported by substantial evidence. *Id.* at 33. He noted that the third hypothetical posed to the VE contained the limitations ultimately adopted in the RFC. *Id.* (citing AR 27, 80-81). The VE found that with these limitations the individual could work as a document preparer, telephone quotation clerk or addressing clerk. *Id.* The ALJ posed a fourth hypothetical in which he changed the ability to finger frequently to the ability to finger occasionally. *Id.* at 34. The VE noted that this change would preclude all the previously identified jobs and only the job of callout operator would allow those limitations. *Id.* The VE added that a person could perform all of the previously identified jobs if the person was allowed to stretch for a full minute out of every hour to "increase his comfort," and that if the fourth hypothetical was changed such that the

11

person could occasionally reach and was limited to infrequent handling and fingering, 93 percent of the jobs were no longer available. *Id.* The VE also determined that absences of three days per month would preclude all work. *Id.*

Knibbe argues that the hypothetical the ALJ relied on did not fully take into account all of Knibbe's limitations. Specifically, Knibbe argues that the record does not support sedentary work given that Dr. Case stated Knibbe could not work. *Id.* (citing Doc. No. 17 at 10-11). The hypothetical also did not include the restrictions and limitations identified by Drs. Bertoni and Bhatti regarding his tremors, limitations in reaching, problems with his gait, problems remembering things and problems with being understood when he speaks. *Id.* It also did not account for his fatigue and tiredness. *Id.* He argues the job of callout operator is particularly inappropriate given his "problems with his voice and being heard." *Id.* (citing Doc. No. 17 at 9).

Judge Roberts noted that nowhere in Dr. Case's letter, or anywhere else in the record, did Dr. Case state that Knibbe could not work. Although Dr. Case stated that Knibbe was disabled, Judge Roberts noted this is not the same standard and that people with disabilities work every day. *Id.* at 35. Judge Roberts noted that Dr. Case had also checked the blank that Knibbe was capable of working in a low stress job and had been presented the option of checking that Knibbe was incapable of working. *Id.* Finally, he noted that even if Dr. Case had opined that Knibbe could not work, the ALJ could have appropriately disregarded that opinion because such a finding is reserved solely for the Commissioner.

With regard to Drs. Bertoni and Bhatti, Judge Roberts noted that Knibbe did not cite any records regarding the specific limitations he asserts should have been included in the hypothetical. *Id.* at 36. Moreover, Judge Roberts previously determined that the ALJ properly weighed Dr. Bertoni's opinion and there was no opinion from Dr. Bhatti in the record for the ALJ to weigh. Dr. Bhatti's treatment notes supported the limitations identified by the ALJ in the RFC and hypothetical. While Dr. Bhatti did diagnose Knibbe with hypophonia (a speech disorder) and documented his slurred and soft speech, he

nonetheless found Knibbe's speech understandable during all but his first examination in November 2014. *Id.* The ALJ also had no difficulties understanding Knibbe during the hearing except for instances where he had to ask him to speak up. *Id.* at 37. Finally, with regard to his assertions of fatigue and tiredness, Judge Roberts noted that Knibbe testified that he had a full day of activities the day before his hearing and did not mention the need to rest. The record was also absent of references to the need to take prolonged rest breaks during the day that could not be accommodated in the workplace. Judge Roberts noted the sedentary RFC was designed to accommodate Knibbe's tendency to get fatigued. Judge Roberts concluded the ALJ incorporated all impairments that the ALJ found supported by the record into the hypothetical.

For all of these reasons, Judge Roberts recommends that I affirm the decision of the ALJ and dismiss Knibbe's case with prejudice.

## IV.    DISCUSSION

Knibbe has the following objections to the R&R:

- The [R&R] errs in rejecting the opinions of Dr. Case, Dr. Bertoni and Dr. Bhatti and not giving them controlling weight

- Given the conclusions reached by Dr. Case, Dr. Bertoni and Dr. Bhatti, if they are not rejected and given weight, then the testimony of the Claimant is then supported by the opinion of Dr. Case, Dr. Bertoni and Dr. Bhatti and therefore credible.

- If arguments I and II as set forth above are found to be correct, then Argument III follows suit in that the ALJ relied upon a defective hypothetical to the Vocational Expert

- The case [sic] should remand the matter in difference [sic] to the treating physician's opinion if the Court chooses not to reverse this matter

*See* Doc. No. 22 at 4. As indicated above, Knibbe's objections all depend (to some extent) on whether the treating physician opinions are entitled to controlling weight. He

contends, at the very least, the matter should be remanded to give deference to those opinions. *Id.* I will consider the ALJ's evaluation of the medical opinions and Knibbe's subjective complaints, followed by the hypothetical question to the VE in conducting my de novo review.

### A.    *Medical Opinions*

Knibbe argues that the ALJ correctly acknowledged that Dr. Case, Dr. Bertoni and Dr. Bhatti are all experts in their field of treating individuals with Parkinson's disease and have an examining/treating relationship with Knibbe. Doc. No. 22 at 7. Each of these factors increases the weight that should be given to these opinions. *Id.* Knibbe also argues that the opinions of these providers are consistent with each other and consistent with the treatment notes. He notes that the symptoms of Parkinson's disease may vary from appointment to appointment and that these inconsistencies should not be used to discount the treating physician opinions because such inconsistencies are a symptom of the condition itself. He argues these opinions should be given more weight than the state agency medical consultant opinions. He also argues that his subjective complaints support the opinions of his treating physicians.

Knibbe's objections to the R&R mirror his initial arguments rather than pointing to any aspect of the record that Judge Roberts failed to consider or overlooked. As summarized above, Judge Roberts discussed in great detail each of the factors under 20 C.F.R. §§ 404.1527(c), 416.927(c), as they applied to the opinions of Dr. Case and Dr. Bertoni and whether the ALJ's assigned weight to those opinions was supported by substantial evidence. *See* Doc. No. 21 at 11-23. He noted that Dr. Bhatti did not provide an opinion, but the ALJ adequately considered his treatment notes. *See supra* pages 5-10. Judge Roberts also discussed the state agency medical consultant opinions. *Id.* at 10. I find it unnecessary to repeat that analysis here. Having conducted my own de novo review of the record and the ALJ's decision, I agree with Judge Roberts' analysis. The

ALJ provided good reasons supported by substantial evidence in the record for weighing the medical opinions as he did.

With regard to Knibbe's argument that the ALJ failed to take into account the nature of Knibbe's Parkinson's disease, the ALJ noted:

> More recently in February 2017, he reported that his condition did not deteriorate and that 'he has not noticed any change in his Parkinson symptoms.' He has reported that his most bothersome symptoms were tremors at peak dose times and if he does not take his medications, his symptoms increased. His medication regime was adjusted and the follow-up treatment notes do not describe intensive tremors. He reported that he was able to drive 3.5 hours at a time, further suggesting his condition was not as limiting as described. During a later visit, he specifically stated that his medication adjustment improved his symptom control.

AR 29. The ALJ also remarked that despite numerous in-office examinations, severe tremors, loss of grip strength, inability to write legibly or severe cognitive limitations were never noted. AR 28. His physicians consistently noted full ranges of motion, intact neurological senses and normal strength throughout his musculoskeletal systems. *Id.* at 28-29. Knibbe does not cite anything in his objections demonstrating a significant variance or deterioration in his symptoms. The ALJ took the nature of Knibbe's Parkinson's condition into account by finding he was more limited than identified by the state agency consultants. *Id.* at 31. He remarked that Knibbe did exhibit some tremors, a slower gait and he required consistent medical examinations to measure the progression of his Parkinson's. *Id.*

I find the ALJ adequately took into account the nature of Knibbe's condition and the full range of symptoms that he experienced. I disagree that the record supports the more severe symptoms identified by Dr. Case and Dr. Bertoni in their opinions or as suggested by Knibbe.[3] This was not a situation in which the ALJ ignored more severe

---

[3] For the reasons discussed below, I do not find that Knibbe's subjective complaints (when properly weighed) support the treating physician opinions.

symptoms in the record and based his RFC only on the "good days" that Knibbe experienced. Had more severe symptoms appeared consistently in the record that were not amenable to treatment, the ALJ would have erred in failing to consider them. However, as noted by the ALJ and Judge Roberts, the treatment notes suggest that Knibbe's symptoms were well-controlled with medication and did not show significant deterioration. While Knibbe's Parkinson's condition is generally progressive, this does not necessarily mean that, at this time, it has progressed to the point where Knibbe is unable to perform all work available in the national economy with the limitations supported by the record.

Overall, I find no error with regard to the ALJ's assessment of the medical evidence and medical opinion evidence in the record and find that the ALJ's reasons for discounting certain aspects of the medical opinions is supported by substantial evidence in the record as a whole as is the ALJ's overall RFC assessment.

**B.    *Knibbe's Subjective Complaints***

Knibbe argues that his subjective complaints are consistent with the treating physician opinions and provide a separate basis to give those opinions great weight. He notes that his testimony reveals the following issues: weak in both hands and tremors, problems with writing, problems reading because he falls asleep, weakness in both hands and arms, loses balance, problems with steps/stairs, getting out of a chair, weakness and loss of strength and grip, dexterity in his hands so he cannot tie his shoes, problems with buttons and dressing himself and soft speech among others. Doc. No. 22 at 8 (citing AR 52-61). He contends the treatment notes from the University of Nebraska Medical Center support these limitations. *Id.* (citing Doc. No. 16 at 5-10). Specifically, Knibbe references a treatment note stating his medication was not working and he was deteriorating at a fast rate. *Id* (citing AR 383). He also argues that the "ALJ also talks about Dr. Case in April 2015 as to his ability to work which is different than what was

said later on." Doc. No. 22 at 8-9. He cites the ALJ's decision, but not "what was said later on" that was different from Dr. Case's April 2015 opinion.

The ALJ stated the following with regard to Knibbe's subjective complaints:

> The claimant testified that his main barrier to employment was due [to] his symptoms related to Parkinson's disease. He reported that he experienced grip strength weakness, difficulty rising from a seated position[], difficulty walking backwards, poor balance control, bilateral hand tremors, and decreased concentration. With regard to functional limitations, the claimant alleged his impairments have negatively affected his ability to lift, squat, bend, reach, walk, kneel, talk, climb stairs, concentrate, and use his hands. Despite these allegations, he stated that he was able to perform household chores, maintain social relationships, complete shopping errands, drive an automobile, go fishing on warm weekends, and use a computer.

> Overall, the medical record does not support his subjective allegations. The progress notes submitted by his treating physicians describe some symptoms but not to the level that the claimant described. The claimant was also encouraged to maintain a regular exercise and activity routine, also suggesting his condition was not as limiting as described. The claimant participated in numerous in-office examinations. The examination results do not describe severe tremors, loss of grip strength, the inability to write legibly, or severe cognitive limitations. Conversely, his physicians continually noted full ranges of motion, intact neurological senses, and normal strength throughout his musculoskeletal systems.

AR 28-29 (internal citations omitted). The ALJ went on to describe specific medical evidence that addressed Knibbe's reported symptoms and his ability to perform work-related functions. AR 29-30.

Judge Roberts found the ALJ properly weighed Knibbe's subjective complaints according to the *Polaski* factors. He noted that the ALJ found the medical records did not document Knibbe's symptoms at the level described, but indicated Knibbe had full range of motion, intact neurological senses and normal strength throughout his musculoskeletal systems. These findings were supported by citations to the record. Judge Roberts examined each of the *Polaski* factors himself to determine if the ALJ's

conclusions were supported by substantial evidence in the record as a whole and found that they were. Doc. No. 21 at 28-33.

The specific treatment note referenced by Knibbe is dated November 7, 2014, and reflects Knibbe's first visit to the University of Nebraska Medical Center's Movement Disorders Clinic for evaluation of Parkinsonism. AR 377. Dr. Bhatti made the following assessment: "Stage 2 Parkinsonism; 45 year old male with young onset parkinsonism starting around age 43-44 with relatively rapid progression and decreased response to medications." AR 383. He also noted that the onset began in early 2013 with anosmia[4] and was soon followed by tremors, akinesia[5] and rigidity and rapid involvement of both sides. *Id.* He prescribed new medication for Knibbe and ordered additional testing. *Id.* at 384.

As Judge Roberts noted, "[w]hile this treatment note acknowledges the rapid progression Claimant was experiencing at the time, and the progressive nature of Parkinson's disease, in general, it does not account for the symptom improvement Claimant has experienced over the years after trying new medication regimens." Doc. No. 21 at 31. Judge Roberts noted that both Dr. Case and Dr. Bhatti described Knibbe's tremors as "absent, "slight," "mild," and "moderate." *Id.* I agree that this notation from Knibbe's first visit does not support a finding that Knibbe's medication is not working and "he [i]s deteriorating a fast rate." Doc. No. 22 at 8. While that may have been Dr. Bhatti's impression at Knibbe's first visit, it does not represent his current status as evidenced by later treatment notes showing that his medication is working to control his symptoms and the progression of his conditions slowed or remained stable. This treatment note does not support the severity of limitations as alleged by Knibbe.

---

[4] Loss or absence of the sense of smell. *See* Stedman's Medical Dictionary 44980 (28th ed. 2006).

[5] Absence or loss of the power of voluntary movement. *See* Stedman's Medical Dictionary 18980 (28th ed. 2006).

With regard to Dr. Case's April 2015 opinion not being consistent with "what was said later on," I can only speculate as to what Knibbe is referring to since he does not cite to anything in the record. *See* Doc. No. 22 at 8-9. My guess is a September 16, 2015, letter in which Dr. Case stated: "The above mentioned meets the definition of handicapped due to an inability to walk in excess of 200 feet without assistance. This handicap is permanent." AR 489. It appears this note was written for purposes of obtaining a permanent handicapped parking status. *See* AR 622 ("Based on his gait difficulties and fatigue, I believe Shawn does qualify for a permanent handicapped parking sticker, and have recommended he take our letter to receive one."). Dr. Case's opinion in that letter has no impact as to whether Knibbe meets social security disability requirements and does not support the severity of limitations as alleged by Knibbe. I have found no other opinion expressed by Dr. Case in the record that is contrary to his April 2015 opinion.

As the ALJ noted, there is no question that Knibbe experiences symptoms related to Parkinson's and that it is progressive. The relevant question is the extent to which those symptoms interfere with work and whether Knibbe can perform work available in the national economy with certain work-related limitations supported by the record. This must be measured by what is in the record now and not speculation as to what limitations Knibbe may have in the future. The ALJ considered and incorporated many of Knibbe's symptoms in crafting the RFC. Indeed, he gave the opinions of the state agency medical consultants minimal weight because those opinions did not fully account for all his impairments. While the disease may progress further to the point that Knibbe is no longer able to perform work-related functions, the record before the ALJ does not support that he has reached that point.

Based on my de novo review, I find no error in the ALJ's assessment of Knibbe's credibility. The ALJ discussed the *Polaski* factors in assessing Knibbe's credibility with regard to his subjective complaints. The ALJ's reasons for declining to fully credit

Knibbe's subjective complaints are supported by substantial evidence in the record as a whole.

## C.    *Hypothetical Question to the VE*

Knibbe's last objection relies on a finding that the treating physician opinions and Knibbe's subjective complaints should have been given greater weight. He argues that if the treating physicians and Knibbe are believed, then the hypothetical questions are defective. *See* Doc. No. 22 at 9. As stated above, I find that the ALJ gave good reasons for giving the treating physician opinions less than controlling weight and not fully crediting Knibbe's subjective complaints. These reasons are supported by substantial evidence in the record as a whole.

As Knibbe acknowledges, the ALJ asked the VE a hypothetical question involving sedentary work with additional restrictions identified in the RFC. Doc. No. 22 at 9. The VE responded that jobs such as document preparer, telephone clerk and addressing clerk would be available. *Id.* (citing AR 82). If the individual's fingering ability was changed from frequently to occasionally, one job (callout operator) would be available in the national economy with the other limitations remaining the same. AR 82. Knibbe argues that he has difficulties with his voice and being heard so this job would not be appropriate. Doc. No. 22 at 9-10.

Judge Roberts considered this argument and noted that while Knibbe was diagnosed with a voice impairment and slurred and soft speech was documented in the record, Dr. Bhatti found Knibbe's speech understandable during all but his first examination in November 2014. Doc. No. 21 at 36-37. The ALJ was also able to understand Knibbe during the hearing except for two instances when he had to ask him to speak up. *Id.* He also noted the transcript was very clean, indicating that the court reporter was able to understand Knibbe. *Id.* Ultimately, the ALJ adopted an RFC with frequent fingering (AR 27) so this is a non-issue, especially because Knibbe does not challenge the fingering limitation.

Knibbe does argue that the ALJ's hypothetical (and RFC) of sedentary work does not take into account all of Knibbe's limitations because Dr. Case says he cannot work. Doc. No. 22 at 11. He also argues that the hypothetical does not include restrictions and limitations related to his tremors, reaching, problems with his gait, difficulties remembering things, difficulties with being understood when he speaks, fatigue and tiredness. *Id.* He contends these limitations are supported by the medical records from Dr. Bhatti.

Judge Roberts addressed Knibbe's argument that the hypothetical and RFC were contrary to Dr. Case's opinion that Knibbe "cannot work." Judge Roberts noted such a statement from Dr. Case was absent in the record. Doc. No. 21 at 35. He acknowledged that Dr. Case's letter stated Knibbe was disabled, but Judge Roberts reasoned that many people with disabilities are able to work, citing the Americans with Disabilities Act (ADA). *Id.* He also noted that Dr. Case checked the blank that Knibbe was capable of performing in a low stress job. He had the option of checking that Knibbe was incapable of working, but did not do so. *Id.* He pointed out that Dr. Case did put limits on Knibbe's work capabilities, indicating that he was able to perform some kind of work. Finally, Judge Roberts noted that had Dr. Case stated Knibbe could not work, the ALJ could have appropriately disregarded that opinion because that decision is reserved for the Commissioner. *Id.*

In his objections, Knibbe argues that working with accommodations (as addressed by the ADA) is not the same standard as under the Social Security Act. *See* Doc. No. 22 at 12-14. He notes that the Eighth Circuit has refused to permit an ALJ to rely upon a VE's assumption that an employer, in compliance with the ADA, would accommodate a claimant's disabilities, thereby enabling the claimant to perform the work in question. *Id.* at 14 (citing *Eback v. Chater*, 94 F.3d 410, 412 (8th Cir. 1996). He also cites another case in which a district court held that where a VE testified that a job would be available *if* the employer provided a special telephone to a hearing-impaired individual, the Commissioner had not met his or her burden of proving that adequate jobs existed in the

national economy.  *Id.* (citing *Sullivan v. Halter*, 135 F. Supp.2d 985, 987-88 (S.D. Iowa 2001).

Knibbe misconstrues Judge Roberts' point.  He noted that Dr. Case's letter stating Knibbe was "disabled" is not akin to stating that Knibbe "cannot work."  *See* Doc. No. 21 at 35.  Indeed, Judge Robert was making the precise point that Knibbe raises in his objections – that disability has different meanings under the ADA and the Social Security Act.  The fact that Dr. Case may have found Knibbe "disabled" for purposes of obtaining a handicapped parking permit does not mean Knibbe "cannot work" for purposes of receiving social security disability benefits.  I find no error with this aspect of Judge Roberts' analysis.

Judge Roberts also addressed Knibbe's argument that the ALJ's hypothetical did not account for all of the limitations as reflected in the records from Dr. Bhatti or the University of Nebraska Medical Center.  *See* Doc. No. 21 at 35.  Judge Roberts noted that Knibbe failed to cite any specific records documenting that Knibbe had greater limitations than reflected in the RFC.  *Id.* at 36.  Knibbe also failed to cite any records in his objections. Doc. No. 22 at 11-12.  Nonetheless, Judge Roberts stated he considered all of the evidence in the record, including Dr. Bhatti's treatment notes that documented only slight to moderate tremors and strength of 5/5.  Doc. No. 21 at 36 (citing AR 381, 751, 767, 784, 793).  He noted after "extensive ambulation testing," Dr. Bhatti consistently found Knibbe's gait to be normal, if slow.  *Id.* (citing AR 753, 761, 768, 776, 786, 796).  Knibbe always received normal results on cognitive and mental examinations and had full range of motion with his upper extremities, in spite of having varying degrees of rigidity on any given day.  *Id.* (citing AR 381, 751, 760, 767, 783, 793).  The record also did not indicate that Knibbe required prolonged rest breaks that could not be accommodated with regularly-scheduled breaks in the workplace.  *Id.* at 37.  Moreover, he noted the sedentary limitation was designed to accommodate Knibbe's tendency to get fatigued.  *Id.* Judge Roberts concluded the ALJ included all impairments in the hypothetical that the ALJ accepted as true and excluded the impairments he had

22

reason to discredit. *Id.* He concluded the limitations identified in the hypothetical encompassed Knibbe's limitations that were documented in the medical records. *Id.*

Having conducted a de novo review, I find no error with regard to the hypothetical question to the VE and agree with Judge Roberts' analysis. The hypothetical question the ALJ relied on is supported by substantial evidence in the record as a whole.

## V.    CONCLUSION

For the reasons set forth herein:

1.    Knibbe's objections (Doc. No. 22) to the Report and Recommendation (Doc. No. 21) are **overruled**.

2.    I **accept** the Report and Recommendation (Doc. No. 21) without modification. *See* 28 U.S.C. § 636(b)(1).

3.    Pursuant to Judge Roberts' recommendation:

a.    the Commissioner's determination that Knibbe was not disabled is **affirmed**; and

b.    Judgment shall enter in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 12th day of August, 2019.

_____
Leonard T. Strand, Chief Judge